# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLAS PAZ,  : 
      **Petitioner,**  : 
      v.  :  **CRIMINAL NO. 02-CR-441**
    : 
UNITED STATES OF AMERICA,  : 
      **Respondent.**  : 

FILED

AUG 05 2009

MICHAEL E. KUNZ, Clerk
By._____ Dep. Clerk

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                                 **August 5, 2009**

On July 17, 2003,[1] Nicholas Paz ("Petitioner") pleaded guilty to one count of conspiracy to commit a bank robbery,[2] one count of armed bank robbery,[3] and one count of using and carrying a firearm in relation to a violent crime.[4]  Petitioner was sentenced on January 9, 2004. However, in light of the Supreme Court's decision in United States v. Booker,[5] the sentence was vacated and the matter remanded back to this Court for resentencing.  On August 8, 2005 a hearing took place at which Petitioner was resentenced,[6] and that sentence was affirmed by the Third Circuit.[7]  Petitioner then filed a *pro se* petition to vacate, set aside or correct his sentence

---

[1] See Tr. Change of Plea Hr'g, June 9, 2003 ("Plea Hearing") [Doc. No. 60].

[2] See 18 U.S.C. § 371.

[3] See 18 U.S.C. § 2113(d).

[4] See 8 U.S.C. § 924(c).

[5] 543 U.S. 220 (2005).

[6] See Tr. of Resentencing Hr'g, August 8, 2005 ("Resentencing Hr'g") [Doc. No. 129].

[7] See Doc. No. 131.

pursuant to 28 U.S.C. § 2255 ("the Petition"), claiming, *inter alia*, that he received ineffective assistance of counsel in violation of the Sixth Amendment, and that he did not know the true nature of the crimes to which he was pleading guilty due to a faulty indictment.[8] The Government filed a Response[9] arguing that the Petitioner waived his right to challenge his indictment when he pleaded guilty, and that the record reflects that Petitioner was well-informed of the consequences of his guilty plea, negating any claims of ineffective counsel.  The Court has carefully considered these filings, as well the transcripts of all relevant hearings, and the matter is now ready for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2002, Petitioner and at least four other individuals participated in a conspiracy that resulted in the robbery of Sun East Federal Credit Union ("SEFCU") in Boothwyn, Pennsylvania.  After entering SEFCU, Petitioner and one of his co-conspirators displayed two different types of revolvers and demanded access to the SEFCU's vault and teller drawers. They took $19,544 in cash both by grabbing it out of the drawers themselves and ordering tellers to do the same.[10]  Petitioner and his co-conspirators placed the cash in garbage bags and ordered both employees and customers to lay on the ground.[11]  The group left SEFCU, got into a waiting getaway car, and drove off with a police officer in pursuit.[12]  The getaway car

---

[8] See Doc. No. 140 ("Pet.").

[9] See Doc. No 144 ("Resp.").

[10] [Doc. No. 13] Indictment ¶¶ 4-7.

[11] Id.

[12] Indictment ¶ 8.

pulled into a nearby parking lot and Petitioner exited the car, scaled a fence to an adjoining parking lot and entered a car driven by another of the co-conspirators, which then drove away with Petitioner in it.[13]  The co-conspirator driving the initial getaway car was apprehended by police.[14]

   A warrant issued for Petitioner's arrest on June 3, 2002.  On July 25, 2002, a Grand Jury returned an indictment against Petitioner and his co-conspirators alleging charges of conspiracy to commit bank robbery, armed bank robbery, carrying a firearm in relation to a violent crime, and being a felon in possession of a firearm.  The last charge was later dismissed on request of the Government.  Petitioner decided to plead guilty and appeared with counsel at a plea hearing was held on June 9, 2003.  During that hearing the Court conducted an extensive competence colloquy of the Petitioner, asking about his immediate experiences in custody as well as his personal history in order to ascertain that he was medically and mentally fit to enter a plea.[15]  The Court explained to Petitioner that he had a right to an attorney,[16] that the Government would have the burden of proving the charges at trial and that a plea of guilty would mean giving up the right to challenge the indictment and any right to an appeal.[17]  The Court asked the Government to recite the elements of the charges against Petitioner and the maximum penalty for each, which Petitioner agreed he understood.[18]  The Court also explained to Petitioner that it was unable to

---

[13] Indictment ¶¶ 9,10.

[14] Indictment ¶ 11.

[15] Plea Hearing at 5:10-12:12.

[16] Plea Hearing at 12:13-13:4.

[17] Plea Hearing at 15:6-21:6.

[18] Plea Hearing at 21:21-24:15.

3

say what his sentence would be until a presentence investigation report ("PSIR") was prepared, and that any sentence could be more or less severe than the one recommended.[19] Also, the Court explained that the firearms charge included an additional, i.e. consecutive, mandatory 7 year term.[20] Petitioner then entered a plea of guilty; there was no written plea agreement.

A PSIR was prepared and a sentencing hearing was held January 9, 2004 during which Petitioner was sentenced to sixty months imprisonment on the charge of conspiracy to commit bank robbery, three hundred months on the charge of armed bank robbery, and eighty-four months on the count of carrying a firearm in furtherance of a violent crime, for a consecutive sentence of four hundred forty-four months, five years supervised release and a $2,500 fine.[21] Petitioner appealed the sentence and, without reviewing the merits of the grounds for appeal, the Third Circuit vacated the sentence and remanded the case to the Court in light of the Supreme Court's ruling in U.S. v. Booker, which made sentencing guidelines "effectively advisory."[22] The Third Circuit generally considers the district courts better suited to address Booker concerns and, as such, vacates and remands appeals for resentencing, as it did in the instant case.[23]

Upon a Booker remand, the Court is obligated to tailor a new sentence "in perspective of the statutory requirements identified by the Booker Court, such as the statutory requirements that a sentence reflect the seriousness of the offense, promote respect for the law, provide just

---

[19] Plea Hr'g at 27:2-12.

[20] Plea Hr'g at 30:18-31:5.

[21] Memo.and Op. of Sentence [Doc. No. 128].

[22] U.S v. Booker, 543 U.S. 220, 246 (2005).

[23] United States v. Davis, 397 F.3d 173, 183 (3d Cir. 2005).

punishment, and afford adequate deterrence."[24]  A new sentencing hearing was scheduled, Petitioner's counsel reappointed, and a new PSIR was prepared.  While there were no changes to the facts regarding the case in the revised PSIR, it did note that Petitioner had subsequently been convicted of homicide in state court and had been convicted by another judge of this district of witness tampering and conspiracy to tamper with a witness.[25]

The now advisory guidelines established a base offense level of twenty.  Two levels were added for the taking of property of a financial institution,[26] and another level added since the amount of money taken in the case was $19,555.[27]   Additionally, because Petitioner was found to have attempted to obstruct justice in this case by attempting to persuade a co-defendant to provide false testimony to a federal grand jury another two levels were added,[28] bringing the offense level to twenty-five. Because Petitioner had been previously convicted of at least two violent crimes he fell within the definition of "career offender" and with the addition of "Chapter Four Enhancements," the offense level came to 37.[29]  Based on those calculations, the recommended sentencing guidelines range was 360 months to life for the charge of bank robbery, plus eighty-four months to be served consecutively with the other charges.[30]  At the re-sentencing hearing Petitioner's counsel argued for a lower sentence than that established in the guidelines

---

[24] United States v. Miller, 417 F.3d 358, 363 (3d Cir. 2005).

[25] Presentence Investigation Report, August 8, 2005 ("PSIR") ¶¶ 53, 54.

[26] See U.S.S.G. § 2B3.1(b)(1).

[27] See U.S.S.G. § 2B3.1(b)(7)(B).

[28] See U.S.S.G. § 3C1.1.

[29] See U.S.S.G. § 4B1.1.

[30] U.S.S.G. Ch. 5, Part A (thirteen or more criminal history points); §§ 4B1.1-1.2.

based on Petitioner's acceptance of responsibility and timely entered plea, and that the obstruction of justice charges against Petitioner should not deprive Petitioner of the usual benefits of acceptance of responsibility and cooperation with the Government. [31] With no objections from the Government the Court reduced Petitioner's offense level by three points, making the final calculation 34 and the recommended sentencing guidelines on the charges of conspiracy to commit bank robbery and armed bank robbery as 262-327 months.[32]

In an effort to construct a "reasonable sentence" under Booker, taking into account all relevant information, the Court considered both positive character references as well as Petitioner's new convictions for homicide, and Petitioner's prolific criminal record. Petitioner was sentenced to sixty months in prison for conspiracy to commit bank robbery, two hundred ten months for armed bank robbery, and eighty four months for possessing a firearm in commission of a violent crime, all to be served consecutively for a total sentence of 354 months, and a reduced fine of $1,500.[33] The sentence was within the guidelines range.

Petitioner filed a Notice of Appeal to the Third Circuit soon thereafter,[34] which that Court denied, affirming his judgment of sentence on November 29, 2006.[35] Petitioner filed the instant habeas Petition to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255. He argues that his trial counsel was ineffective because (a) counsel failed to argue that the

---

[31] Resentencing Hr'g at 21:24-22:3; 16:1-25.

[32] See U.S.S.G. Ch. 5, Part A.

[33] Resentencing Hr'g at 44:1-46:21.

[34] See Doc. No 126.

[35] See Doc. No. 131.

indictment was defective since it used the terms "bank" and "credit union" interchangeably, and (b) counsel failed to argue that count three of possession of a firearm in furtherance of a violent crime was only included as a sentence enhancing measure. Petitioner further argues that his appellate counsel was ineffective for failure to argue the points listed above. Additionally, Petitioner contends that he did not enter a plea of guilty knowingly since he could not know the true nature of the crimes he was charged with due to the alleged defects in the indictment.

## II. DISCUSSION

### A. Jurisdiction

As a threshold matter, this Court has jurisdiction over the instant Petition. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on habeas corpus petitions brought under § 2255 which begins to run from the latest of the date on which the judgment of conviction becomes final. For purposes of a federal habeas petitioner, a conviction becomes final after the time allotted for direct appeal expires.[36] In a criminal case, a defendant may appeal from the district court's judgment within ten days of entry of judgment.[37] If a timely appeal has been taken to the appropriate circuit court, a defendant may file a petition for a writ of certiorari with the United States Supreme Court within ninety days of the circuit court's denial of his appeal.[38]

In this case, the Court entered judgment of sentence on August 8, 2005. Petitioner filed a notice of direct appeal on August 12, 2005. On November 29, 2006, the Third Circuit affirmed

---

[36] Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

[37] FED. R. APP. P. 4(b)(1)(A)(I).

[38] SUP. CT. R. 13(1).

7

the Court's decision. As a result, Petitioner's conviction became final ninety days after the Third

Circuit dismissed his appeal. Because Petitioner filed his Motion on December 4, 2007, his

appeal is timely and this Court has jurisdiction.


**B.**     **Applicable Law**

        **i. Allegations that the Indictment was Defective and Led To A Guilty Plea That Was**

**Not Knowing and Voluntary, and That Counsel was Ineffective.**

        Petitioner alleges that the indictment issued against him was defective because it charges

him with conspiracy to commit armed "bank robbery" and "bank" robbery, instead of armed

robbery of a "credit union," which is defined differently under the law.[39]  Consequently, he

contends that because he believed he was pleading guilty to crimes related to the armed robbery

of a "credit union" – not of a "bank" – that his plea was not knowing or voluntary.

        Petitioner waived his right to challenge the sufficiency of the indictment upon entering a

guilty plea and by failing to raise these issues on his direct appeal of his sentence to the Third

Circuit.  "It is well settled that a voluntary and intelligent plea of guilty made by an accused

person, who has been advised by competent counsel, may not be collaterally attacked."[40]  And

even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only

if first challenged on direct review. Habeas review is an extraordinary remedy and 'will not be

allowed to do service for an appeal.'"[41]  Since the issue was not raised on direct appeal, a

_____

[39] See 18 U.S.C. § 2113(f).

[40] Bousley v. United States, 523 U.S. 614, 621 (1998).

[41] Id.

challenge to the sufficiency of the indictment is not appropriate for a habeas petition and the Court is not obligated to entertain arguments on the subject.  The Court observes, however, that Petitioner's related allegations of ineffective assistance of counsel create the need to review the record on this matter for any constitutional claims.

"In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating."[42]  While the statute under which Petitioner was charged does offer specific definitions for a "bank" and a "credit union," it is the action of robbing one of those institutions to which Petitioner entered a guilty plea.  The statute articulates, "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ..."[43]  It is immaterial whether Petitioner pleaded guilty to armed robbery of a credit union or a bank, as the armed robbery of either a bank or credit union is the same crime under the statute.  The indictment sufficiently alleges acts that, if proven, would violate 18 U.S.C. § 371 (conspiracy to commit bank robbery) and 18 U.S.C. § 2113(d) (armed bank robbery), and therefore, is not defective.

Furthermore, Petitioner knowingly and voluntarily pleaded guilty to those crimes, as well as the third count, knowingly and voluntarily.  The standard set forth by the Third Circuit

---

[42] United States v. Al Hedaithy, 392 F.3d 580, 589 (3d Cir. 2004).

[43] 18 U.S.C. § 2113(a).

9

regarding whether a plea was entered knowingly and voluntarily in <u>United States v. Mabry</u>[44] states that the court must decipher "what occurred and what the defendant contends" and "review the terms of the plea agreement and change-of-plea colloquy."[45]

Petitioner entered an open plea on June 9, 2003, so the Court looks to the change-of-plea colloquy. The record clearly demonstrates that Petitioner was aware of the charges against him, including their individual elements and the maximum penalties he faced on each count. During the recitation of the elements of each of the crimes charged, the Government referred specifically to the SEFCU as the "bank" Petitioner was accused of robbing.[46] Additionally, the record indicates that Petitioner was aware that pleading guilty ended his opportunities to challenge the indictment[47] and of the maximum sentence for the crimes with which he was charged.[48] Petitioner was aware of the elements of the crimes for which he was being charged, the penalties for each, and the procedural consequences of entering a guilty plea and therefore did so knowingly and voluntarily, as the Court so found. He was specifically asked by the Court if he was satisfied with his court-appointed counsel and whether he had ample opportunity to discuss his case with him. Petitioner responded in the affirmative regarding both questions.[49]

In order for an ineffective assistance of counsel claim to succeed, the party alleging such must demonstrate two specific elements: (1) that his attorney's performance was deficient, and

---

[44] <u>United States v. Mabry</u>, 536 F.3d 231, 236 (3d Cir. 2008)

[45] <u>Mabry</u>, 536 F.3d at 238.

[46] Plea Hr'g at 24:19-23.

[47] Plea Hr'g at 15:6-19.

[48] Plea Hr'g at 23:17-24:8.

[49] Plea Hr'g at 12:25-13:24

(2) that he was prejudiced by the deficiency. Petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[50] Moreover, "[a] defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."[51]

Petitioner presents no evidence or argument that he was dissatisfied with his counsel at the time of his guilty plea, or that if counsel had acted any differently that he would not have pleaded guilty. Petitioner has failed to demonstrate that his counsel's performance was in any way deficient or below the reasonable standards of professionalism, other than to claim that the indictment was defective in that it charged him with robbing a "bank" as opposed to a "credit union," an issue that he did not address at his plea hearing or on direct appeal. The Court cannot ascertain any prejudice to Petitioner as a result of counsel's actions and therefore finds no violation of the Sixth Amendment as related to ineffective counsel at the entry of his guilty plea.

Petitioner also makes a claim of ineffectiveness of appellate counsel in violation of the Sixth Amendment. Petitioner's Court appointed counsel, Stuart Wilder, Esquire, who represented Petitioner during both his initial sentencing and was re-appointed for the re-sentencing, did file a Notice of Appeal to the Third Circuit on behalf of his client.[52] Petitioner contends that because Mr. Wilder later submitted an "Anders Brief" advising the Court that after

---

[50] Strickland v. Washington, 466 U.S. 668, 687 (1984).

[51] Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995).

[52] See Doc. 125.

11

examining the record he found no appealable issues that were not wholly frivolous, he was ineffective.[53] The Third Circuit released appellate counsel and affirmed this Court's decision.[54] This Court will not review the Third Circuit's ruling.

The Court finds no evidence that the indictment was defective or that the language used to describe Petitioner's crimes in the indictment or at the Plea Hearing caused Petitioner to enter a plea of guilty that was not knowing or voluntary and further, that counsel was not ineffective for failing to move to dismiss the indictment or in any other regard on this issue.

### ii. Allegation that Count III was merely a sentencing enhancement

Petitioner alleges that the third count of the indictment, which charged him with "Using and Carrying a Firearm During a Crime of Violence," was included merely as a sentence enhancing measure and does not stand on its own as a crime. Petitioner offers no basis for this allegation aside from the allegation itself. While the charge does require the condition precedent that an additional crime has been committed, the charge is in fact its own distinct crime with specific and distinct elements as enumerated in 18 U.S.C. § 924(c), and specific penalties. Moreover, at his Plea Hearing Petitioner was made aware that the Government would have to prove those specific elements should the case proceed to trial.[55] The claim is without merit.

### III. Conclusion

For the reasons set forth above, the Court will deny Petitioner's motion for habeas corpus relief. Additionally, the Court finds that Petitioner does not raise any substantial issue of law,

---

[53] See Anders v. State of California, 386 U.S. 738 (1967).

[54] See Doc. 131.

[55] Plea Hr'g 22:23-23:6

12

and that there is no probable cause for the issuance of a certificate of appealability.[56] An

appropriate Order follows.

---

[56] A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not met his burden here.